UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
FILED
OCT 2 0 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-600-GWU

PHYLLIS J. KINGSLEY, PLAINTIFF,

VS. **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff originally brought Kingsley v. Barnhart, London Civ. Action No. 02-613 (E.D. Ky.) to appeal the unfavorable portion of an administrative decision on her 1997 applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The defendant's motion to enter judgment and to remand was granted, with the proviso that consideration on remand should be limited to the period between August, 1997 and January, 2001, as had been argued by the plaintiff. (Tr. 409-410). After another negative administrative decision was entered (Tr. 390-397), the appeal continued and is now before this Court on the defendant's latest motion for entry of judgment; this is opposed by the plaintiff, who has filed a motion for summary judgment.

## APPLICABLE LAW

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v.

1

Kingsley

Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991); Crouch v. Secretary of Health and Human Services, 909 F.2d 852, 855 (6th Cir. 1990). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Crouch, 909 F.2d at 855.

The regulations outline a five-step analysis for evaluating disability claims. See 20 C.F.R. Section 404.1520.

The step referring to the existence of a "severe" impairment has been held to be a *de minimis* hurdle in the disability determination process. Murphy v. Secretary of Health and Human Services, 801 F.2d 182, 185 (6th Cir. 1986). An impairment can be considered not severe only if it is a "slight abnormality that minimally affects work ability regardless of age, education, and experience." Farris v. Secretary of Health and Human Services, 773 F.2d 85, 90 (6th Cir. 1985). Essentially, the severity requirements may be used to weed out claims that are "totally groundless." Id., n.1.

Step four refers to the ability to return to one's past relevant category of work, the plaintiff is said to make out a *prima facie* case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national

2

economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott

3

Kingsley

v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The plaintiff had earlier been found to have been disabled since January 27, 2001, the date of her fiftieth birthday. The question is whether the plaintiff was disabled for the period between August 25, 1997 and January 26, 2001.

The latest administrative law judge (ALJ) has concluded that Kingsley was capable of medium level work with certain "limited but satisfactory" mental restrictions (Tr. 395) and that she could do all her past relevant work (Tr. 396).

The fact that the plaintiff could not perform past relevant work, however, is obvious from the record. Vocational Expert (VE) William Braunig had testified that all the past work had been semiskilled or skilled (Tr. 92) and that a need to avoid

4

close interaction with coworkers and the public would preclude the past apartment manager, license bureau clerk and general office worker positions. (Tr. 93). The other VE, James Miller, has characterized the plaintiff's work slightly differently and found all but *two* positions to be skilled or semiskilled; unlike the earlier VE, he did not discuss the impact of mental restrictions which were at more than a "limited but satisfactory level," other than to state the plaintiff would not be employable with the various "seriously limited but not precluded" restrictions cited in Exhibit 40-F (Tr. 504). Mental health examiners during the relevant period cited GAF scores no greater than 50 (Tr. 317, 358), suggestive of serious mental symptoms as per the Diagnostic and Statistical Manual of Mental Disorders (4th Ed.) (DSM-IV).[1] Her treating physician stated that he felt her mental health symptoms would preclude full-time work. (Tr. 381). The examiners also mentioned problems such as emotional lability in dealing with others (Tr. 317) and emotional instability (Tr. 364) as well as a "poor" ability to deal with the stress of routine work (Tr. 361). In the most optimistic of the assessments, a medical reviewer, who did not discount the examiners' opinions,[2] noted only that the plaintiff could meet the basic demands of *un*skilled work (Tr. 333) with certain moderate limitations (Tr. 331-332), the precise nature of which were not repeated to VE Miller (Tr. 503) *or* VE Braunig (Tr. 93) and

---

[1] Even the 2004 mental health examiner cited a GAF of only 51 (Tr. 468) consistent with moderate mental symptoms.

[2] See Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994).

would appear on its face to preclude the skilled or semiskilled positions. Information from the plaintiff's apparent supervisor as an apartment manager indicated that the job exposed the plaintiff to stress. (Tr. 223). Clearly, then, there was no support of record for the mental restrictions used by the latest ALJ and a significant amount of evidence suggesting mental disability.

Further, the medium physical residual functional capacity cited in the latest ALJ opinion was greater than the exertional level cited by Ronald Moser just prior to the pertinent period (Tr. 241), various non-examining medical reviewers (Tr. 304-311), as well as Treating Physician Vosler (Tr. 354-355). According to <u>one</u> of the two VEs, a simple inability to engage in medium exertion would eliminate one past job and, at least as performed in the general economy, two others. (Tr. 92). Further, Vosler and Moser, the two treating sources, both cited <u>sedentary</u> lifting and carrying restrictions which, even by the more cautious of the VEs, would immediately <u>by itself</u> eliminate three past jobs (Tr. 502-503).

<u>All</u> opinion sources also cited non-exertional physical restrictions. Non-exertional restrictions cited by Vosler would disable the plaintiff, according to the most conservative VE testimony. (Tr. 503-504). Multiple non-exertional restrictions were cited by Moser, including a decreased ability to do "<u>any</u> bending, stooping, kneeling, crawling or climbing of steps . . ." (Tr. 241) (emphasis added); should this be interpreted, as is not illogical, to mean that the plaintiff could not do any climbing of stairs, a finding of disability would be warranted under Social Security Ruling 85-

6

Kingsley

15. Even had the non-examining medical advisors addressed the examiners' opinions (Tr. 310) so as to be entitled to greater weight as per Barker, supra, their non-exertional restrictions were not mentioned to either VE.

In view of such evidence, and noting the persuasive argument of the plaintiff is that the defendant is seeking a remand of the case for relatively the same reason already sought in the prior appeal (i.e., London Civ. Action No. 02-613), the case will be remanded for an award of benefits.

This the ⟨20⟩ day of October, 2006.

G. WIX UNTHANK
SENIOR JUDGE

7